IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02790-RM-KLM

MOHAMED TOURE,

     Plaintiff,

v.

UNITED NATURAL FOODS, INC.,

     Defendant.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court on Defendant's **Motion for Summary Judgment** [Docket No. 21; Filed March 6, 2013]. Defendant also filed a **Memorandum in Support of its Motion for Summary Judgment** on March 6, 2013 [#23] (the "Motion").[1] On March 25, 2013, Plaintiff, who is proceeding *pro se*, filed a short Response in Opposition to Defendant "UNFI" Motion for Summary Judgment [sic] [#24]. Plaintiff also filed a Response to Defendant "UNFI" Motion for Summary Judgment and Plaintiff's Timeline Brief of Undisputed Facts [sic] [#25], which the Court interprets as Plaintiff's Response ("Response"). On April 8, 2013, Defendant filed a Reply [#26]. Pursuant to 28 U.S.C. §

_____

[1] The Court notes that, contrary to the requirements of D.C.COLO.LCivR 56.1A. ("A motion under Fed. R. Civ. P. 56 for summary judgment or partial summary judgment shall include a statement of undisputed facts and be supported by argument and a recitation of legal authority incorporated into the motion in lieu of a separate opening brief."), the statement of undisputed facts and the bulk of Defendant's legal arguments appear in the accompanying memorandum rather than in the Motion for Summary Judgment. Accordingly, the Court cites to the accompanying memorandum [#23] as the Motion throughout this recommendation, and cites to Defendant's Motion for Summary Judgment [#21] only when making findings to be recorded on the docket.

636(b)(1)(A) and D.C.COLO.LCivR 72.1C., the Motion has been referred to this Court for a recommendation regarding disposition [#22].  The Court has reviewed the Motion, the Response, the Reply, the attached exhibits, entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Defendant's Motion for Summary Judgment [#21] be **GRANTED**.

## I.  Summary of the Case[2]

Defendant United Natural Foods, Inc. ("UNFI"), hired Plaintiff, an African Muslim, on October 31, 2006 as a Safety and Equipment Trainer.  *Pl.'s Depo.* [#23-1] at 32, 35; *Motion* [#23] at 3; *Response* [#25] at 4; *Compl.* [#1] at 4.  "As Safety and Equipment Trainer, Plaintiff was required to train employees on safety and on how to properly operate UNFI equipment."  *Motion* [#23] at 3 (citing *Pl.'s Depo.* [#23-1] at 43); *Response* [#25] at 4. Plaintiff reported to Eddie Fisher ("Fisher") while working as the Safety and Equipment Trainer, and Mr. Fisher reported to the then-Operations Manager, Sam Towe ("Towe"). *Pl.'s Depo.* [#23-1] at 35-36.

In February 2008, Plaintiff was promoted to Warehouse Shipping Supervisor.  *Pl.'s Depo.* [#23-1] at 47; *Response* [#25] at 4.  In this position, Plaintiff was responsible for shift opening and closing, conducting reasonable suspicion drug tests, dealing with customer service, making sure trucks were on time, and supervising up to one hundred people.  *Pl.'s Depo.* [#23-1] 49-50.  As Warehouse Shipping Supervisor, Plaintiff reported to Troy Cosby ("Cosby"), the Warehouse Manager, who reported to Mr. Towe until 2009 when John

---

[2] These facts are taken largely from Defendant's Statement of Undisputed Facts included as part of the Motion [#23].  The Court includes citations to pleadings filed by both parties where appropriate to establish that the given fact is, in fact, undisputed, and notes Plaintiff's additional alleged facts where appropriate.

Owens ("Owens") became the Operations Manager.  *Pl.'s Depo.* [#23-1] 52-53.  With the exception of the precise date of his promotion, Plaintiff does not dispute Defendant's representation of these facts.  *Response* [#25] at 4.

Prior to March 2011, Plaintiff received and reviewed UNFI's Code of Conduct.  *Pl.'s Depo.* [#23-2] at 81.  Defendant alleges, and Plaintiff accepts without dispute, that as a Supervisor, Plaintiff was required to have his employees abide by the Code of Conduct. *Motion* [#23] at 3; *Response* [#25] at 4.  The Code of Conduct reads in part as follows:

> The Company conducts its business in accordance with the highest standards of ethics and morality. . . . We are honest and ethical in our business relations, which are reflected in how we treat each other, our customers and suppliers. We keep our promises, satisfy our commitments and admit our mistakes. . . . By way of specific example, UNFI expects all associates to be mindful of the following guiding principles at all times . . . [u]se honest, direct, but considerate communication.

*Motion* [#23] at 3 (citing *UNFI Handbook, Pl.'s Ex. 1 Pt. 3* [#23-3] at 5).  Plaintiff knew throughout his employment with UNFI that dishonest behavior or communication was a basis for termination.  *Pl.'s Depo.* [#23-1] at 77-78.

On July 25, 2008, Plaintiff received his first written evaluation as a UNFI supervisor. *Pl.'s Depo.* [#23-1] at 56; *2008 Mgmt. Performance Appraisal, Pl.'s Ex. 1 Pt. 2* [#23-2] at 20.  In the review, Mr. Cosby articulated many areas in which Plaintiff was performing well, such as his knowledge of the order selection, forklift operations, and loading.  *2008 Mgmt. Performance Appraisal, Pl.'s Ex. 1 Pt. 2* [#23-2] at 24.  However, Mr. Cosby also noted areas in which Plaintiff needed to improve.  For example, Mr. Cosby noted at the conclusion of his report that Plaintiff needed to be "[h]onest, positive and open [in his] communication," although Mr. Cosby's specific comments in the "Communication" section of the review did not mention honesty, and instead referenced Plaintiff's decisions to

needlessly address issues on the floor and an incident where he "openly singled out and argued with an employee." *Id.* at 22, 24. Plaintiff admitted in his deposition that Mr. Cosby told him about his "need for some improvement in the area of communication," and that although Plaintiff disagreed, he was informed he "needed to improve on . . . honesty and positive and open communication." *Pl.'s Depo.* [#23-1] at 57, 61.

On September 20, 2010, Plaintiff received another written annual evaluation from Mr. Cosby. *2010 Performance Review, Pl.'s Ex. 1 Pt. 2* [#23-2] at 26. In this evaluation, Mr. Cosby again indicated that, although Plaintiff had shown improvement, Plaintiff needed "to communicate with more diplomacy and tact." *Id.* at 27-28. Mr. Cosby also observed that Plaintiff needed to "realize that even keeping the visions and values in the forefront when making decisions[,] how that [*i.e.*, those values] is communicated is critical as well." *Id.* at 27; *Pl.'s Depo.* [#23-1] at 68. Honesty and following policy are two values and visions for UNFI. *Pl.'s Depo.* [#23-1] at 69. "Again, Plaintiff disagreed with Cosby that he had any issue following the vision and values of UNFI, but concedes that Cosby counseled him on these issues." *Motion* [#23] at 4 (citing *Pl.'s Depo.* [#23-1] at 68).

Although not directly countering Defendant's representation of Plaintiff's performance reviews, Plaintiff notes in his Response that subsequent reviews cited to Plaintiff's improvements. *Response* [#25] at 5; *2010 Performance Review, Pl.'s Ex. 1 Pt. 2* [#23-2] at 28 (noting in Communication comments that Plaintiff "has shown improvement over the last review period"), 31 (indicating accomplishment of all goals set by the previous year's review). Plaintiff also notes that each review granted him a merit increase. *2008 Management Performance Appraisal, Pl.'s Ex. 1 Pt. 2* [#23-2] at 25; *2010 Performance Review, Pl.'s Ex. 1 Pt. 2* [#23-2] at 32.

Defendant asserts that "one of Plaintiff's job responsibilities was to properly enforce UNFI's Drug and Alcohol Policy." *Motion* [#23] at 4 (citing *Pl.'s Depo.* [#23-1] at 43, 49). Defendant also asserts that "under this policy, if a supervisor suspected that another supervisor was under the influence of alcohol, he was required to talk to another supervisor and then call a manager, who would determine whether a drug test was appropriate." *Motion* [#23] at 4 (citing *Pl.'s Depo.* [#23-1] at 42-45). Plaintiff counters that "there were no policies in the year prior to 2011 that if a Supervisor was suspected to be under the influence of Alcohol that Plaintiff or any other Supervisor was required to call Management." *Response* [#25] at 5. Citing to the UNFI Employee Handbook, section 1, page 7, section 6, Plaintiff alleges that "the company reserves the right to request a reasonable suspicion drug/alcohol test when reasonable cause exists to suspect that an employee is impaired by drug or alcohol use." *Id.* Although the Court could not locate this quote in the UNFI Associate Handbook, the Court does note that the section on Substance Abuse does not indicate a reporting requirement. *UNFI Handbook, Pl.'s Ex. 1 Pt. 3* [#23-3] at 6. However, the Court also notes that Plaintiff indicated in his deposition that "the policy at UNFI that [he] understood was in effect was if a subordinate employee was under suspicion of having too much alcohol, [he] would get a second opinion from a peer supervisor[, and if] two guys agree, [Plaintiff] will call [his] manager" to conduct a drug test. *Pl.'s Depo.* [#23-1] at 44.

On February 20, 2011, Ruben Perez ("Perez"), a peer supervisor, called Plaintiff and told him that he thought he smelled alcohol on another employee. *Id.* at 85. Mr. Perez was off duty at the time he called Plaintiff. *Id.* Although Plaintiff discussed the matter with another colleague, he decided not to report it to management because he could not smell alcohol on the employee. *Id.* at 86-87. The next day, Mr. Owens told Plaintiff that he

should have reported the incident to management pursuant to UNFI's Drug and Alcohol Policy. *Id.* at 87-88. Plaintiff does not dispute these facts, but emphasizes that he did not smell alcohol on the employee and thus had no reasonable suspicion that the employee was intoxicated. *See Response* [#25] at 6; *Pl.'s Depo.* [#23-1] at 87. Plaintiff also clarifies that the smell was instead similar to a scent on another employee days earlier, an employee whom Mr. Cosby told Plaintiff did not smell like alcohol. *See Response* [#25] at 6; *Pl.'s Depo.* [#23-1] at 87. This account is also consistent with his deposition. *Pl.'s Depo.* [#23-1] 85-88.

On March 2, 2011, Plaintiff observed Jordan Scott ("Scott"), a loader at UNFI, talking on his cell phone after his break had apparently ended. *Id.* at 93; *Pl.'s Depo. Pt. 2* [#23-2] at 94. Plaintiff sent Mr. Scott home immediately. *Pl.'s Depo. Pt. 2* [#23-2] at 95. After sending Mr. Scott home, Plaintiff went to Human Resources to request a write-up. *Id.* at 94. Carol Stephenson, a Human Resources Business Partner, looked in Mr. Scott's file and told Plaintiff that he did not have any prior write-ups. *Id.* at 94, 99. According to Defendant, "[Mr.] Owens then told Plaintiff that he should not send [Mr.] Scott home." *Motion* [#23] at 5 (citing *Pl.'s Depo. Pt. 2* [#23-2] at 101-02 ("Don't send anyone home without documentation in the file.")). The Declaration of John Owens supports this fact. *Decl. of John Owens ("Owens Decl.")* [#23-4] ¶ 5. Although Plaintiff had already sent Mr. Scott home and knew that Mr. Owens did not know this fact, he did not inform Mr. Owens that he had sent Mr. Scott home. *Pl.'s Depo. Pt. 2* [#23-2] at 101-102. Plaintiff does not dispute these facts, but emphasizes that "[p]rior to March 2, 2011[,] Mr. Cosby (Warehouse Manager) specifically instructed Plaintiff and the rest of the Supervisors to handle Mr. Scott['s] excessive breaks and phone calls by sending him home for that day[, and that Mr.

Cosby would] deal with it the next day." *Response* [#23] at 7.  This is also supported by Plaintiff's deposition.  *Pl.'s Depo. Pt. 2* [#23-2] at 129.

The next day, Mr. Owens learned that Plaintiff had sent Mr. Scott home and concluded that Plaintiff had either (1) disregarded his direction not to send Mr. Scott home or (2) failed to mention that Mr. Scott had been sent home at the time of their March 2 discussion.  *Owens Decl.* [#23-4] ¶ 6.  It is uncontested that Plaintiff met with Mr. Cosby, Mr. Owens, and Kelli Krantz, another Human Resources Business Partner, a few days later on March 7.  *Motion* [#23] at 6; *Pl.'s Depo. Pt. 2* [#23-2] at 126, 129; *Response* [#25] at 8. During this meeting, when Plaintiff was asked to explain the events surrounding sending Scott home, Plaintiff admitted that he had already sent Mr. Scott home when Mr. Owens told him not to do so, and that he did not reveal this information to Mr. Owens on March 2. *Pl.'s Depo. Pt. 2* [#23-2] at 128-29; *Compl. Ex. 4, Written Statement* [#1] at 12.[3]  When Plaintiff was asked why he did not tell Mr. Owens that he had already sent Mr. Scott home, he claimed, "it did not cross my mind."  *Pl.'s Depo. Pt. 2* [#23-2] at 128-29; *Owens Decl.* [#23-4] ¶ 7; *Response* [#25] at 3.  Mr. Owens then informed Plaintiff that he was suspended pending further investigation.  *Pl.'s Depo. Pt. 2* [#23-2] at 129.

On March 8, 2011, Plaintiff called UNFI's Ethics and Compliance Hotline and complained about the suspension.  *Pl.'s Depo. Pt. 2* [#23-2] at 130-31.  While Plaintiff complained about "being treated unfairly" during this call, the report does not indicate that he claimed any discriminatory motive for this alleged unfair treatment.  *Ethics and*

---

[3]  Plaintiff's exhibits do not appear as attachments to the Complaint, but are interspersed within Plaintiff's Complaint at various scattered pages.  Where a citation to the Complaint refers to an included exhibit, the citation will include the exhibit number, if provided by Plaintiff, or a description of the exhibit.

*Compliance Hotline Report, Pl.'s Ex. 22* [#23-3] at 38.   Following the investigation, Mr. Owens concluded that Plaintiff had "acted in a deceptive and dishonest manner on March 2 and that he aggravated the situation further during the investigation by explaining his dishonestly with more dishonesty."   *Owens Decl.* [#23-4] ¶ 8.   On March 18, 2011, Mr. Owens discharged Plaintiff for dishonesty and insubordination.   *Pl.'s Depo. Pt. 2* [#23-2] at 138.   "[Mr.] Owens made the decision to discharge Plaintiff, and [Mr.] Cosby relayed the decision to Plaintiff."   *Motion* [#23] at 6; *see Pl.'s Depo. Pt. 2* [#23-2] at 138; *Owens Decl.* [#23-4] ¶ 8; *Response* [#25] at 8.

Defendant asserts that "Plaintiff's sole support for claiming that his race, religion, or national origin played a part in his termination was the fact that a picture of his wife and children was thrown in the trash on three occasions."   *Motion* [#23] at 7 (citing *Pl.'s Depo. Pt. 2* [#23-2] at 201-02).   In support, Defendant cites to a portion of Plaintiff's deposition:

> Q: All right. So I've asked you to – to give me reasons why you believe you were fired because of your religion or your national origin or race, and you've told me because the family pictures were thrown in the trash. Are there any other reasons that you believe, any other facts, any other evidence you have –
>
> A: No.
>
> Q: – that supports your conclusion that you were fired because of your religion or race?
>
> A: No.

*Motion* [#23] at 7 (citing *Pl.'s Depo. Pt. 2* [#23-2] at 214).   Plaintiff admits that he has no proof that Mr. Owens or Mr. Cosby placed his family picture in the trash.   *Motion* [#23] at 7 (citing *Pl.'s Depo. Pt. 2* [#23-2] at 202).

In September 2008, Plaintiff asserts that Mr. Cosby temporarily rescinded Plaintiff's

religious accommodation to attend Friday prayers, and Plaintiff had to bring the issue to Mr. Towe, the operations manager, to have the accommodation reinstated. *Compl.* [#1] at 17. Plaintiff asserts that he again complained to Mr. Towe about these issues in May 2009. *Id.* at 17, 30; *Response* [#25] at 16. Although Plaintiff does not cite to affidavits or exhibits to support these allegations, Plaintiff does cite to an email he sent to Mr. Cosby concerning his missing pictures on May 14, 2009. *See Compl., Ex. 5, May 2009 Email* [#1] at 30. Citing to two Earning Statements, Plaintiff also asserts that he was unable to take compensation days or vacation time from April 2010 until September 2010. *See Compl., Ex. 8, Earning Statement for Pay Date August 26, 2010* [#1] at 33; *Compl., Ex. 9, Earning Statement for Pay Date June 3, 2010* [#1] at 34. Plaintiff additionally provides a Hearing Officer's Decision regarding the incident when an employee was accused of intoxication at work, *Compl., Ex. 1, Hearing Officer's Decision* [#1] at 11; phone records from May 2011, *Compl., Ex. 2, ATT Records* [#1] at 13-14; a certificate awarded to Plaintiff in March 2010 for completion of Drug and Alcohol Training for Supervisors, *Compl., Ex. 3, Certificate* [#1] at 26; and a series of emails from 2009 regarding Plaintiff's coworkers' complaints to Mr. Cosby about his closing procedures, *Compl., Ex. 6, Hutzell's Complaint* [#1] at 31; *Compl., Ex. 7, FWD: Closing Last Night* [#1] at 32.

Plaintiff makes a number of allegations without supporting evidence. The Court therefore notes, but cannot consider on a motion for summary judgment, Plaintiff's conclusory allegations. *See White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Plaintiff alleges that when he was promoted to Warehouse Shipping Supervisor in February 2008, he "immediately began to notice disparate treatment by Mr. Cosby." *Compl* [#1] at 8; *see Response* [#25] at 15 ("For example working more days and not receiving any

compensation days even not being able to take his vacation time."). Plaintiff further alleges that on June 23, 2008, Plaintiff "engaged in protected conduct by complaining to Eddie Fisher [*i.e.*, Plaintiff's former boss] about Mr. Cosby and also confronting Mr. Cosby." *Compl* [#1] at 8; *see Response* [#25] at 15. He contends that Mr. Cosby's discriminatory treatment included "mak[ing] comments concerning Plaintiff['s] accent or kuffy[4] [sic]." *Response* [#25] at 15. Plaintiff also alleges that he complained to Mr. Paul Thompson, the HR manager, on July 30, 2008, "about the different treatment he was receiving under Mr. Cosby." *Response* [#25] at 16. In February 2011, Plaintiff alleges that he again found pictures of his family in the trash. *Compl.* [#1] at 9. When Plaintiff complained to Mr. Owens about the incident, Mr. Owens allegedly told Plaintiff that "he should be used to it by now," and later "interrupted [Plaintiff's] prayers, poked him repeatedly, and told him to go back to work." *Id.* Plaintiff also alleges that Mr. Owens again disrupted his prayers on February 22, 2011, and that he further "made discriminatory and false statements about [Plaintiff] having multiple wives." *Id.* Plaintiff allegedly called the UNFI discrimination hotline and the EEOC to file a complaint about this incident on February 22, 2011. *Id.* Plaintiff also alleges that he was supposed to attend a Quick Hire Training on May 3, 2010, and June 17, 2010, but that although supervisors hired after Plaintiff were able to attend the training, Plaintiff never received the training. *Response* [#25] at 17. However, Plaintiff provides no evidence concerning any of these complaints or incidences of discriminatory treatment aside from his unsworn statements. Between July 2010 and October 7, 2010, Plaintiff further alleges that he "was told to watch Mr. David Ali and several other Black

---

[4] "A kufi is a traditional skull cap and is associated with members of the Islamic faith." *Cole v. Danberg*, No. 10-088-GMS, 2012 WL 254852, at *3 (D. Del. Jan. 26, 2012).

employees who was [sic] trying to exercise they [sic] rights under section[ ]7 of the National Labor Act," and that he refused. *Response* [#25] at 19. Plaintiff does not provide any documents or affidavits to support this allegation of protected activity. Therefore, because the "nonmoving party may not rely upon unsupported allegations without 'any significant probative evidence tending to support the complaint,'" the Court does not consider the above allegations. *White*, 45 F.3d at 360 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 259 (1986)).

On January 5, 2012, Plaintiff filed a Charge of Discrimination with the Colorado Civil Rights Division and the Equal Employment Opportunity Commission ("EEOC"). *Pl.'s Depo. Pt. 2* [#23-2] at 221; *see Compl.* [#1]. Plaintiff alleges that Defendant discriminated and retaliated against him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII") when it terminated his employment on March 18, 2011. *See Compl.* [#1]. Plaintiff seeks "reinstatement to his position with full back pay and benefits[;] [j]udgement [sic] and damages against Defendant[ ], UNFI[;] exemplary and or punitive damages in an amount to be shown at trial[;] compensatory damages . . . for past and future economic and non-economic loses[; and] a declarat[ory] judgment that Defendant have [sic] violated [Plaintiff's] rights to be free from discrimination in the workplace . . . ." *Compl.* [#1] at 35. Defendant argues that "the undisputed evidence establishes that [Defendant] terminated Plaintiff for deceptive and dishonest conduct." *Motion* [#23] at 1. Defendant also argues that because Plaintiff filed his EEOC charge on January 5, 2012, the statutory limitations period bars any claims based on discriminatory conduct alleged to have occurred prior to March 11, 2011 (300 days prior to the date of the EEOC charge). *Id.* at 9.

## II.  Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Pursuant to Fed. R. Civ. P. 56(c), summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party.  *Liberty Lobby*, 277 U.S. at 248.  A fact is material if it might affect the outcome of the case under the governing substantive law.  *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323).  When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."  *Id.* at 671.  If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor.  *See Liberty Lobby*, 277 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999).  The non-movant must show the existence of a genuine dispute of a material issue by going beyond the allegations in its pleading and providing "specific facts showing there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324.  To satisfy its burden of providing specific facts, the nonmoving party must tender affidavits or

other competent evidence. *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright et al., Federal Practice and Procedure § 2738 at 356 (3d ed.1998).

Additionally, when considering Plaintiff's filings, the Court is mindful that it must construe liberally the filings of a *pro se* litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [the *pro se* litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, *pro se* litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

### III. Analysis

### A.    Claims Barred by the Statute of Limitations

Defendant argues that because Plaintiff filed his EEOC charge on January 5, 2012,

the statutory limitations period bars any claims based on discriminatory conduct alleged to have occurred prior to March 11, 2011, and that accordingly, only Plaintiff's claims challenging his termination survive this statutory bar.   *Motion* [#23] at 9.   In response, Plaintiff cites to *National Railroad Passenger Corp. v. Morgan ("Morgan")*, 536 U.S. 101 (2002), where the Supreme Court held that discrete acts occurring outside of the 300-day filing period could be used to support a discriminatory hostile work environment claim. *Response* [#25] at 9.   Plaintiff alleges that his termination was simply the "last day of discrimination."   *Id.*

Under Title VII, employees must file a charge of discrimination with the EEOC prior to bringing a lawsuit. 42 U.S.C. § 2000e-5(e)(1); *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1162 (10th Cir. 2007).   "Because Title VII seeks to avoid 'the pressing of stale claims,' it requires aggrieved persons to file any such charge within certain specified periods after the allegedly unlawful conduct occurred."   *Montes*, 497 F.3d at 1162 (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982)).   "In states with a state agency that has authority over employment discrimination claims . . . employees have up to 300 days to file an EEOC charge if they first file a charge with the state agency."   *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 628 (10th Cir. 2012); *see also* 42 U.S.C. § 2000e-5(e)(1).   This limitations period begins to run on the date the employee learns of the adverse employment action.   *Daniels*, 701 F.3d at 628.   Any claim not filed within this statutory limit is time barred.   *Id.* (finding failure to promote claims barred by the statute of limitations); *Montes*, 497 F.3d at 1162 (finding discriminatory discharge claims barred because the EEOC charges were filed more than 300 days after the terminations).

In *Morgan*, the Supreme Court held that discrete acts occurring outside of the 300-

day filing period could be used to support a discriminatory hostile work environment claim when they involved "the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." 536 U.S. at 120-21. In other words, "[a] charge alleging a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Id.* at 122.

The Tenth Circuit has recently addressed *Morgan* in connection with the continuing violation doctrine as applied to Title VII and ADEA claims. *See Almond v. Unified Sch. Dist. No. 501*, 665 F.3d 1174 (10th Cir. 2011). In *Almond*, the Tenth Circuit reiterated the rule espoused by the United States Supreme Court in *Delaware State College v. Ricks*, 449 U.S. 250 (1980), which held that "whether the adverse consequences flowing from the challenged employment action hit the employee straight away or only much later, the 'limitations period [ ] normally commence[s] when the employer's decision is made' and 'communicated' to the employee." *Almond*, 665 F.3d at 1177 (quoting *Ricks*, 449 U.S. at 258). In other words, "the 'proper focus' is on the time that the employee has notice of 'the *discriminatory* acts,' not 'the time at which the *consequences* of the act became most painful.'" *Id.* (quoting *Ricks*, 449 U.S. at 258). In *Almond*, the Tenth Circuit found that *Morgan* deviated from the general rule in *Ricks*, but that it drew "only a narrow distinction for hostile work environment claims." *Almond*, 665 F.3d at 1178. *Morgan* reaffirmed the holding of *Ricks* by stating that "'[d]iscrete acts such as termination . . . 'trigger the statute of limitations when announced to the claimant, and do so whether or not all of their adverse effects or consequences are immediately felt." *Id.* (quoting *Morgan*, 536 U.S. at 114). In this case, there is no dispute that Defendant informed Plaintiff on March 18, 2011, that his

employment was terminated.  *Motion* [#23] at 6; *Response* [#25] at 7; *Compl.* [#1] at 2.

Hence, the limitations period commenced on that day.

Despite Plaintiff's conclusory averment that *Morgan*'s continuing violation doctrine

saves his Title VII claim, "[b]y its own terms, then, *Morgan* helps [Plaintiff] in this case not

at all. [Plaintiff doesn't] seek to pursue a hostile work environment claim but wish[es]

instead to challenge [Defendant's] termination . . . decision[ ].  And *Morgan* expressly held

that those sorts of decisions remain subject to *Ricks*'s rule."  *Almond*, 665 F.3d at 1178.

Even interpreting the Complaint liberally, Plaintiff does not allege a hostile work

environment claim.  Hence, the continuing violation doctrine does not apply in this

circumstance, and Plaintiff cannot succeed on his asserted Title VII claims of discriminatory

discharge and retaliation based on the discrete acts occurring prior to March 11, 2011.

**B.      Failure to State a Claim Pursuant to Title VII**

Title VII prohibits an employer from engaging in certain activities.  Among these

activities, Title VII forbids an employer from "discharg[ing] any individual . . . because of

such individual's race, color, religion, sex, or national origin . . . ," 42 U.S.C. § 2000(e)-

2(a)(1) (discrimination), and also forbids an employer from retaliating against an individual

because the individual "has opposed any practice made an unlawful employment practice"

by Title VII, 42 U.S.C. § 2000(e)-3(a) (retaliation).  A plaintiff may prove discrimination and

retaliation through either direct or circumstantial evidence.  *See Adamson v. Multi Cmty.*

*Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008); *Anderson v. Acad. Sch. Dist.*

*20*, 122 F. App'x 912, 916 (10th Cir. 2004).  Direct evidence demonstrates on its face that

employment termination was either discriminatory or retaliatory.  *Adamson*, 514 F.3d at

1145.  In contrast, circumstantial evidence permits the fact finder to draw a reasonable

inference from facts indirectly related to discrimination or retaliation that discrimination or retaliation has, in fact, occurred. *Anderson*, 122 F. App'x at 916.

Because Plaintiff does not provide direct evidence of discrimination or retaliation, Plaintiff's Title VII claims are subject to the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination or retaliation. *Id.* If the plaintiff meets this initial burden, the defendant must then offer a legitimate, non-discriminatory reason for its employment action. *Id.* If the defendant offers a legitimate, non-discriminatory reason for its employment action, the plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual. *Id.* Although noting that Plaintiff was an at-will employee, the Court is mindful that "[a]lthough the general rule that an employer can discharge an at-will employee for any reason or no reason is still valid, an employer can no longer terminate an at-will employment relationship for a racially discriminatory reason." *Perry v. Woodward*, 199 F.3d 1126, 1133 (10th Cir.1999).

### 1.    Title VII Discrimination

Plaintiff has not established a prima facie case of discrimination under Title VII. To make a prima facie case of discrimination under Title VII, a plaintiff must establish "that (1) [he] belongs to some protected class, (2) [he] was qualified for the position or benefit at issue, (3) [he] suffered an adverse employment action, and (4) [he] was treated less favorably than others . . . ." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1201 (10th Cir. 2006) (quoting *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1134 (10th Cir. 2004)). As to the first prong, it is not disputed that Plaintiff belongs to a protected class. *See Voltz v. Coca-Cola Enters., Inc.*, 91 F. App'x 63, 68 (10th Cir. 2004) (noting that

African Americans are a protected class); *Gluhic v. Safeway, Inc.*, No. 11-cv-02408-CMA-KMT, 2013 WL 1283820, at *4 (D. Colo. Mar. 28, 2013) (recognizing that a Muslim plaintiff was a member of a protected class).  As to the third prong, Plaintiff's termination certainly constitutes an adverse employment action.  *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999).  Defendant does not contest prong two.  *Motion* [#23] at 11.

The fourth prong of the prima facie standard for Title VII discrimination requires Plaintiff to offer evidence that he was treated less favorably than other similarly-situated employees.  *Argo*, 452 F.3d at 1201.  The Tenth Circuit has noted that "[s]imilarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline."  *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006) (quoting *Armaburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997)).  The Court notes that Plaintiff briefly mentions that the other Warehouse Supervisors working under Mr. Cosby, namely "Jason Walker, Don Wollenzin, and Brenda Hutzell," were treated more favorably than Plaintiff.  *Compl.* [#1] at 16; *see Response* [#25] at 15 (alleging that Plaintiff worked more days than his peers and did not receive as many compensation days).  Although the Court is fully aware of Plaintiff's conclusory allegation that he was treated unfavorably, the applicable "standard is one of relative—and not absolute—disfavor."  *Brown v. Flextronics Am., LLC*, No. 11-cv-01117-LTB-KLM, 2013 WL 3216110, at *5 (D. Colo. Jun. 17, 2013).  Plaintiff has the burden to show the existence of a genuine dispute of a material issue by going beyond the allegations in his pleading and providing "specific facts showing there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324.  To satisfy his burden of providing specific facts, Plaintiff must tender affidavits or other competent evidence.  *Concrete Works*, 36 F.3d at 1517.  Without evidence beyond

Plaintiff's mere allegation that these employees were supervised by the same supervisor and were subject to the same standards governing performance evaluation and discipline, Plaintiff has failed to identify similarly-situated employees who were subject to more favorable treatment for the purposes of overcoming a motion for summary judgment. Accordingly, absent proper identification of any similarly-situated employees, the Court cannot find that Plaintiff has created a genuine issue of material fact regarding whether he was treated less favorably.

Even had Plaintiff been able to support his allegations, Defendant has presented legitimate, nondiscriminatory reasons for Plaintiff's termination—namely, its "belief that Plaintiff acted in a deceptive and dishonest manner in violation of UNFI's core values." *Motion* [#23] at 14; *see, e.g.*, *Swachkammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1169 (10th Cir. 2007) (holding that violating the employer's ethical standards constituted a legitimate, nondiscriminatory reason for termination); *Piercy v. Maketa*, 480 F.3d 1192, 1196-97, 1200 (10th Cir. 2007) (holding that violating the employer's dress code, failing to obey an order when counseled about the dress code violation, and departing from the truth by denying such counseling constituted legitimate, nondiscriminatory reasons for discharge); *Plotke v. White*, 405 F.3d 1092, 1102 (10th Cir. 2005) (holding that failing to follow instructions from superiors constituted a legitimate, nondiscriminatory reason for discharge). Plaintiff repeatedly challenges the logic of this decision, alleging that his termination was based on "extraordinarily minor and nitpicky matters." *Response* [#25] at 13. However, an at-will employee "may be dismissed without any justifying cause whatever," *Fremont Re-1 Sch. Dist. v. Jacobs*, 737 P.2d 816, 820 (Colo. 1987), and simply "second-guess[ing] employers' business judgments is not evidence of pretext." *EEOC v.*

*Picture People, Inc.*, 684 F.3d 981, 989 (10th Cir. 2012); *Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 986 (10th Cir. 1996). Because Plaintiff has not satisfied prong four of the prima facie standard for Title VII discrimination, Plaintiff cannot make out a prima facie case of Title VII discrimination. Accordingly, the Court **recommends** that the Defendant's **Motion for Summary Judgment** [#21] be **granted** in regard to Plaintiff's Title VII discriminatory discharge claim, and that judgment enter in favor of Defendant on this claim.

### 2.    Title VII Retaliation

A plaintiff bringing a retaliation claim pursuant to Title VII "must establish that retaliation played a part in the employment decision." *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011) ("the showing required to establish retaliation is identical under § 1981 and Title VII of the Civil Rights Act") (internal citations omitted). To establish a prima facie case of retaliation pursuant to Title VII, a plaintiff must show that "(1) [he] engaged in protected opposition to discrimination; (2) [he] suffered an adverse action that a reasonable employee would have found material; and (3) a causal nexus exists between [his] opposition and the employer's adverse action." *Durant v. MillerCoors, LLC*, 415 F. App'x 927, 932 (10th Cir. 2011) (quoting *Montes*, 497 F.3d at 1176).

Plaintiff fails to satisfy this prima facie standard. Regarding the first prong, between July 2010 and October 7, 2010, Plaintiff alleges that he "was told to watch Mr. David Ali and several other Black employees who was [sic] trying to exercise they [sic] rights under section[ ]7 of the National Labor Act." *Response* [#25] at 19. However, Plaintiff has the burden of providing "specific facts showing there is a genuine issue for trial," *Celotex*, 477 U.S. at 324, and must tender affidavits or other competent evidence to adequately carry

that burden.  *Concrete Works*, 36 F.3d at 1517.  Plaintiff does not provide any evidence to support this allegation, and thus the allegation fails to satisfy the first prong of the prima facie test.

Plaintiff's frequent alleged complaints to Mr. Fisher, Mr. Cosby, and Mr. Thompson regarding Mr. Cosby's allegedly discriminatory actions and comments may have constituted protected opposition to discrimination.  *See Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1205 n.4 (10th Cir. 2000) (quoting *Robbins v. Jefferson Cnty. Sch. Dist. R-1*, 186 F.3d 1253, 1258 (10th Cir. 1999)) (internal quotation marks omitted) ("[A] plaintiff does not have to prove the validity of the grievance [he] was allegedly punished for lodging; opposition activity is protected when it is based on a mistaken good faith belief that Title VII has been violated.").  However, the only such evidence offered by Plaintiff is an email from May 14, 2009, from Plaintiff to Mr. Cosby.  *Compl., Ex. 5, May 2009 Email* [#1] at 30.  The full text of the email is as follows:

> Troy [Cosby],
>
> Again, my kid's pictures are missing from my desk.  The first time I found them in the trash along with the rest of my paperworks [sic], and today I checked all over and no sign of them
>
> Troy I need your help.

*Id.*  Plaintiff does not provide a response from Mr. Cosby.  This email, even read liberally, makes no allegations of mistreatment or discrimination based on racial or religious animus.  "[O]pposition activity is protected when it is based on a mistaken good faith belief that Title VII has been violated."  *Love v. Re/Max of Am., Inc.*, 738 F.2d 383, 385 (10th Cir. 1984).  However, "[i]f an employee's complaint to the employer fails to include allegations that could reasonably be construed as directed at a prohibited act, the complaint is not

'protected opposition' under the first prong of a retaliation claim, any action taken against the employee as a result of the complaint could not be retaliation for protected opposition." *Smith v. Bd. of Educ. of Sch. Dist. Fremont RE-1*, 83 P.3d 1157, 1163 (Colo. App. 2003) (citing *Smith v. Bd. of Cnty. Comm'rs*, 96 F. Supp. 2d 1177 (D. Kan. 2000)).  Therefore, any action taken against the employee as a result of such a complaint "could not be retaliation for protected opposition," and cannot establish a retaliatory causal nexus. *Id.*  Under those circumstances, the employer could only be retaliating against an unprotected complaint. *See Robbins*, 186 F.3d 1253, 1258 (holding that, although informal complaints are often sufficient, plaintiff failed to provide evidence that her own complaint concerned discrimination) *abrogated on other grounds by Morgan*, 536 U.S. 101; *Gallagher v. Kleinwort Benson Gov't Sec. Inc.*, 698 F. Supp. 1401 (N.D. Ill. 1988) (summary judgment for defendant upheld where plaintiff did not provide evidence that she expressed opposition to any unlawful practice).  Even assuming that the email could be reasonably read as alleging discrimination, the alleged retaliatory action did not occur until nearly two years later.  *See Timmons v. Lockheed Martin Corp.*, No. 11-cv-03408-CMA-KMT, 2013 WL 2467705, at *5 (D. Colo., Jun. 07, 2013) ("In the instant case, Timmons has failed to establish causation because more than two years passed between her complaints in 2008 and her termination on November 29, 2010[.]"); *see also Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (holding that a three-month period, standing alone, is insufficient to establish causation).  Thus, this email fails to support Plaintiff's claims, as it fails to meet the third prong of prima facie claim for retaliation.

Plaintiff also allegedly called the UNFI discrimination hotline on February 22, 2011, but provides no records or affidavits supporting his claim that this call occurred, that the call

constituted a protected complaint, or that any individuals involved in his termination knew about the call. *Compl.* [#1] at 9. Although is uncontested that on March 8, 2011, Plaintiff called UNFI's Ethics and Compliance Hotline and complained about the suspension, *Pl.'s Depo. Pt. 2* [#23-2] at 130-31, the report does not expressly indicate that he claimed any discriminatory motive for this alleged unfair treatment. *Ethics and Compliance Hotline Report, Pl.'s Ex. 22* [#23-3] at 38. Even assuming, *arguendo*, that the call was improperly or incompletely recorded, *see id.* at 39 ("The information contained in this report was provided by a third party source. The Network, inc., does not verify the accuracy or completeness of the information contained in this report, and therefore, cannot guarantee its accuracy or completeness."), and that it could constitute a protected complaint, Plaintiff provides no evidence that any individuals involved in his termination learned of the call or its alleged contents in the ten days between Plaintiff's hotline call and his termination. *Williams v. Rice*, 983 F.2d 177 (10th Cir. 1993) (holding that a causal connection cannot be shown where person who acts adversely against a plaintiff is unaware of a protected complaint). Therefore, although the second prong is satisfied because Plaintiff's termination constitutes an adverse employment action, *see Coors Brewing Co.*, 181 F.3d at 1178, Plaintiff fails to establish any causal nexus between Plaintiff's February 22 hotline call and his termination. *Williams*, 983 F.2d at 181. For these reasons, Plaintiff has failed to establish a prima facie case of Title VII retaliation. *See Robbins*, 186 F.3d 1253; *Gallagher*, 698 F. Supp. 1401. Accordingly, the Court **recommends** that Defendant's **Motion for Summary Judgment** [#21] be **granted** in regard to Plaintiff's claim for Title VII retaliation, and that judgment enter in favor of Defendant on this claim.

## IV.  Conclusion

For the foregoing reasons, the Court respectfully **RECOMMENDS** that Defendant's **Motion for Summary Judgment** [#21] be **GRANTED**, and that judgment enter in favor of Defendant on all claims.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.   A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.   *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: August 23, 2013

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge